Case No. 22-50892

# In the United States Court of Appeals for the Fifth Circuit

———————◆———————

**UNITED STATES OF AMERICA**,
Plaintiff - Appellee
v.
**NOLYN WAYNE MCMARYION**,
Defendant - Appellant

———————◆———————

consolidated with

———————◆———————

No. 22-50894

———————◆———————

**UNITED STATES OF AMERICA**,
Plaintiff - Appellee
v.
**NOLYN WAYNE MCMARYION**,
Defendant - Appellant

———————◆———————

On Appeal from the United States District Court Western District of Texas, Midland-Odessa Division, No. 7:17-cr-00233

———————◆———————

## BRIEF OF APPELLANT NOLYN WAYNE MCMARYION

———————◆———————

CLOUTHIER LAW, PLLC
Susan J. Clouthier TBN 24062673
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 77380
Telephone: (346) 443-4300  Fax: (346) 443-4343
susan@clouthierlaw.com
**Attorney for Appellant**

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| District Judge: | The Honorable David Counts |
| Appellant: | Nolyn Wayne McMaryion |
| Counsel for Appellant: | Robert R. Sykes (trial counsel) <br> Susan J. Clouthier (appellate counsel) |
| Attorneys for United States | Brandi Young <br> John A. Fedock <br> Joseph H. Gay, Jr. |

*/s/ Susan J. Clouthier*
Susan J. Clouthier

**Attorney for Appellant**
**Nolyn Wayne McMaryion**

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Nolyn Wayne McMaryion, respectfully requests oral argument. Although Appellant represents the facts and legal arguments are thoroughly presented in this brief and in the record, this appeal raises multiple complex issues of law and fact. Given the variety of legal standards, controlling laws, and case law precedent applicable to the different issues, this Court may benefit from the presence of counsel to personally answer whatever questions or concerns the Court may have in considering the law and the facts presented in the appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.......................................................ii

STATEMENT REGARDING ORAL ARGUMENT ...............................................iv

TABLE OF AUTHORITIES ...........................................................................vii

SUBJECT MATTER AND APPELLATE JURISDICTION .....................................1

STATEMENT OF THE ISSUES .......................................................................2

STATEMENT OF THE CASE...........................................................................3

    I.    Facts and proceedings below. ...............................................3

    A.    Search of the home (March 2022).........................................5

    B.    Jury trial (July 5-6, 2022)......................................................7

    II.    PSR and sentencing. ...........................................................14

    III.    Revocation of supervised release.........................................15

SUMMARY OF THE ARGUMENT ..................................................................16

ARGUMENT AND AUTHORITIES .................................................................19

    I.    The district court erred when it denied McMaryion's Motion for Judgment of Acquittal because the evidence failed to prove McMaryion lacked knowledge and intent necessary to have constructive possession of the ammunition................19

    A.    Standard of review.......................................................19

    B.    The evidence did not establish essential elements -- knowledge of, and intent to control, the ammunition -- to prove constructive possession..................................21

II.    The district court improperly admitted McMaryion's
       unadvised statement in violation of Miranda v. Arizona. ..27

       A.    Standard of review.....................................................27

       B.    The totality of the circumstances shows McMaryion's
             custodial statement was involuntary and without
             advice of his rights.....................................................28

III.   The district court erred in enhancing McMaryion's
       guidelines sentence for obstruction of justice. ....................38

       A.    Standard of review.....................................................38

       B.    Equating McMaryion's testimony to perjury was
             procedural sentencing error. .....................................38

IV.    Invalidity of the newer criminal conviction removes the
       basis for revocation of McMaryion's supervised release.....40

       A.    Standard of review.....................................................40

       B.    The sentence on revocation was plainly unreasonable.
             ...................................................................................42

CONCLUSION..........................................................................................43

CERTIFICATE OF SERVICE.........................................................................45

CERTIFICATE OF COMPLIANCE..................................................................46

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arizona v. Fulminante,*
  499 U.S. 279 (1991) .................................................... 28, 33, 34

*Bram v. United States,*
  168 U.S. 532 (1897) ................................................................ 34

*Chapman v. California,*
  386 U.S. 18 (1967) ........................................................... 28, 34

*Chavez v. Martinez,*
  538 U.S. 760 (2003) ................................................................ 33

*Edwards v. Arizona,*
  451 U.S. 477 (1981) ................................................................ 29

*Florida v. Powell,*
  559 U.S. 50 (2010) ................................................................. 29

*Goodwin v. Johnson,*
  132 F.3d 162 (5th Cir. 1997) ................................................ 28

*Haynes v. Washington,*
  373 U.S. 503 (1963) ................................................................ 33

*Hopkins v. Cockrell,*
  325 F.3d 579 (5th Cir. 2003) ................................................ 33

*Howes v. Fields,*
  565 U.S. 499 (2012) ................................................................ 30

*Illinois v. Perkins,*
  496 U.S. 292 (1990) ........................................................... 30, 32

*J.D.B. v. North Carolina,*
 564 U.S. 261 (2011) ..................................................................... 29, 31

*Minnesota v. Murphy,*
 465 U.S. 420 (1984) ........................................................................... 31

*Miranda v. Arizona,*
 384 U.S. 436 (1966) ............................................................. 29, 30, 33

*Missouri v. Seibert,*
 542 U.S. 600 (2004) ........................................................................... 34

*Murray v. Earle,*
 405 F.3d 278 (5th Cir. 2005) ............................................................ 31

*Rehaif v. United States,*
 139 S. Ct. 2191 (2019) ....................................................................... 22

*Rhode Island v. Innis,*
 446 U.S. 291 (1980) ........................................................................... 32

*Schneckloth v. Bustamente,*
 412 U.S. 218 (1973) ........................................................................... 33

*United States v. Arellano-Banuelos,*
 912 F.3d 862 (5th Cir. 2019) ...................................................... 30, 32

*United States v. Barnes,*
 713 F.3d 1200 (9th Cir. 2013) .................................................... 31, 33

*United States v. Bengivenga,*
 845 F.2d 593 (5th Cir. 1988) ............................................................ 31

*United States v. Brantley,*
 537 F.3d 347 (5th Cir. 2008) ............................................................ 41

*United States v. Broadnax,*
 601 F.3d 336 (5th Cir. 2010) ............................................................ 22

*United States v. Cavazos,*
    668 F.3d 190 (5th Cir. 2012) ............................................................... 30

*United States v. Chavez,*
    281 F.3d 479 (5th Cir. 2005) ............................................................... 28

*United States v. Chavira,*
    614 F.3d 127 (5th Cir. 2010) ................................................... 31, 32, 34

*United States v. Courtney,*
    463 F.3d 333 (2006) ............................................................................ 28

*United States v. De Leon,*
    170 F.3d 494 (5th Cir. 1999) ............................................................... 22

*United States v. Delgado-Martinez,*
    564 F.3d 750 (5th Cir. 2009) ............................................................... 38

*United States v. Dunigan,*
    555 F.3d 501 (5th Cir. 2009) ............................................................... 41

*United States v. Dunnigan,*
    507 U.S. 87 (1993) .............................................................................. 39

*United States v. Foley,*
    946 F.3d 681 (5th Cir. 2020) ......................................................... 41, 42

*United States v. Fountain,*
    277 F.3d 714 (5th Cir. 2001) ............................................................... 20

*United States v. Garza,*
    990 F.2d 171 (5th Cir. 1993) ............................................................... 25

*United States v. Gonzalez-Rodriguez,*
    621 F.3d 354 (5th Cir. 2010) ............................................................... 23

*United States v. Green,*
    272 F.3d 748 (5th Cir. 2001)........................................................Passim

*United States v. Gross,*
    142 F. App'x 829 (5th Cir. 2005)............................................22

*United States v. Horace,*
    227 F. App'x 350 (5th Cir. 2007)............................................22

*United States v. Johnson,*
    352 F.3d 146 (5th Cir. 2003)..................................................40

*United States v. Johnson,*
    880 F.3d 226 (5th Cir. 2018)..................................................39

*United States v. Jones,*
    484 F.3d 783 (5th Cir. 2007)......................................42, 43, 44

*United States v. Kippers,*
    685 F.3d 491 (5th Cir. 2012)..................................................42

*United States v. Lewis,*
    265 F. App'x 255 (5th Cir. 2008)............................................22

*United States v. Lim,*
    897 F.3d 673 (5th Cir. 2018)..................................................30

*United States v. Lopez–Urbina,*
    434 F.3d 750 (5th Cir. 2005)..................................................20

*United States v. Menesses,*
    962 F.2d 420 (5th Cir. 1992)..................................................20

*United States v. Meza,*
    701 F.3d 411 (5th Cir. 2012)..................................................22

*United States v. Miller,*
    634 F.3d 841 (5th Cir. 2011)............................................41, 42

*United States v. Morales-Sanchez,*
  609 F.3d 637 (5th Cir. 2010) ................................................................40

*United States v. Moreno,*
  185 F.3d 465 (5th Cir. 1999) ................................................................29

*United States v. Mudd,*
  685 F.3d 473 (5th Cir. 2012) ......................................................23, 25

*United States v. Newton,*
  365 F.3d 659 (2d Cir. 2004) ................................................................32

*United States v. Ollie,*
  442 F.3d 1135 (8th Cir. 2006) ............................................................32

*United States v. Peltier,*
  505 F.3d 389 (5th Cir. 2007) ..............................................................42

*United States v. Pennington,*
  20 F.3d 593 (5th Cir. 1994) ..............................................20, 23, 24

*United States v. Perez-Solis,*
  709 F.3d 453 (5th Cir. 2013) ..............................................................40

*United States v. Pettigrew,*
  77 F.3d 1500 (5th Cir. 1996) ..............................................................21

*United States v. Redd,*
  355 F.3d 866 (5th Cir. 2003) ..............................................................21

*United States v. Ricardo,*
  472 F.3d 277 (5th Cir. 2006) ..............................................................40

*United States v. Rivera,*
  444 F. App'x 774 (5th Cir. 2011) ......................................................23

*United States v. Rojas Alvarez,*
  451 F.3d 320 (5th Cir. 2006) ....................................21, 24, 25

*United States v. Sanchez,*
  432 F. App'x 957 (5th Cir. 2010) ...........................................23

*United States v. Spakowski,*
  32 F.3d 565, 1994 WL 442370 (5th Cir. Jul. 26, 1994) (per curiam) ...38

*United States v. Vara,*
  476 F. App'x 554 (5th Cir. 2012) (*per curiam* ......................24

*United States v. Warren,*
  720 F.3d 321 (5th Cir. 2013) ...........................................41, 42

*United States v. Willis,*
  562 Fed. Appx. 249 (5th Cir. 2014) .......................................20

**Statutes**

18 U.S.C. §3553(a) .................................................................15

18 U.S.C. § 922(g)(1) ............................................................3, 21

18 U.S.C. § 3742 ....................................................................1

18 U.S.C. §§ 3231, 3583 ...........................................................1

18 U.S.C. §§ 3742(a)(4) and (e)(4) ...............................................41

28 U.S.C. § 1291 ....................................................................1

U.S. Const. amend V ...............................................................29

**Rules**

Fed. R. App. P. 32(a)(5) ..........................................................47

Fed. R. App. P. 32(a)(6) .............................................................. 47

Fed. R. App. P. 32(a)(7)(B)(iii) ................................................. 47

Federal Rule of Criminal Procedure 29 ........................................... 10, 20

## SUBJECT MATTER AND APPELLATE JURISDICTION

**Subject Matter Jurisdiction in the District Court**. This case arose from the prosecution of an offense against the laws of the United States of America. The district court had jurisdiction of this case under 18 U.S.C. §§ 3231, 3583.

**Jurisdiction in the Court of Appeals**. Case No. 22-50892 is a direct appeal from a final decision of the U.S. District Court for the Western District of Texas, Midland-Odessa Division, entering judgment of conviction and imposing a criminal sentence. Consolidated Case No. 22-50894 is an appeal of the district court's contemporaneous revocation of supervised release and imposition of an additional, consecutive sentence in the 2017 criminal case, wherein Appellant already served his prison sentence and was under Supervised Release when he was arrested and tried for the second alleged offense. This Court has jurisdiction of the appeals under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

The district court entered a written judgment imposing a 51-month term of imprisonment on October 12, 2022. ROA.22-50892.157-62. The district court also entered an Order Revoking Supervised Release and Resentencing of Defendant on October 10, 2022, imposing a 24-month

term of imprisonment. ROA.22-50894.102. Appellant filed a timely notice of appeal on October 6, 2022. ROA.22-50894.96-97, 22-50892.150-51.

## STATEMENT OF THE ISSUES

1. The district court erred when it denied the Motion for Acquittal because the Government's evidence was insufficient to support the jury verdict on the sole count of indictment, thus this Court should enter an acquittal in favor of Nolyn Wayne McMaryion.

2. The district court erred when it introduced custodial statements by Nolyn Wayne McMaryion obtained in violation of his Fifth Amendment rights, thus this Court should vacate the judgment of conviction.

3. Alternatively, the district court erred when it enhanced the Guidelines sentence calculation by two levels for obstruction of justice, without making specific findings to support its determination that Nolyn Wayne McMaryion had perjured himself while testifying at trial, thus this Court should vacate the sentence and remand for resentencing.

4. The district court erred when it revoked supervised release and sentenced Nolyn Wayne McMaryion to a consecutive term of two

years imprisonment, because that revocation relied entirely on the erroneous jury verdict, thus this Court should vacate the revocation sentence and remand for clarification and resentencing.

## STATEMENT OF THE CASE

## I.   Facts and proceedings below.

In April 2022, a grand jury indicted Nolyn Wayne McMaryion. ROA.22-50892.3. The sole count of the Indictment charged McMaryion with possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ROA.22-50892.10.

Trial began on July 5, 2022, in the United States District Court for the Western District of Texas, before the Honorable David Counts. ROA.22-50892.6-7. The Government, through its witnesses and evidence, showed that in January 2022, McMaryion was completing a prior federal prison sentence and about to enter into a term of supervised release. ROA.22-50892.602. The completed prison sentence resulted from a conviction in 2018 of the offense of unlawful possession of a firearm by a convicted felon.[1]

---

[1] McMaryion also had a prior 2012 conviction in Texas state court for felony tampering of a government record. ROA.22-50892.541-42.

As part of the transition and reentry process from prison to supervised release, McMaryion informed the U.S. Probation Office that McMaryion intended to reside in his former home at Duke Avenue, in Odessa, Texas. ROA.22-50892.595. That home was owned by McMaryion's mother, and in fact was where McMaryion was living when he had been arrested on the firearms charges in 2017. ROA.22-50892.688-89.

While McMaryion had been serving his federal prison term from 2017-2022, his mother left McMaryion's room and personal effects essentially untouched, and the home itself virtually abandoned. ROA.22-50892.692-93. Unfortunately, the investigating Texas police who had arrested and first charged Nolan in 2017, left behind in his home the ammunition those police had found there. ROA.22-50892.694. McMaryion's mother testified she collected the ammunition in a box and covered the box with clothing before sliding the now-heavy, full box onto the back of the closet floor. ROA.22-50892.693.

Prior to McMaryion's transfer from the Residential Reentry Center to his Odessa home, a Probation Officer visited the home with McMaryion's mother to inspect it as McMaryion's proposed residence on

release. ROA.22-50892.602, 689. The probation officer saw no objectionable items on inspection, and she approved the home for McMaryion to relocate. ROA.22-50892.604.

After McMaryion took up residence again in the home on Duke Avenue, his probation officer visited McMaryion. ROA.22-50892.615-16. On one occasion, she saw two loose rounds of ammunition; she advised McMaryion he was not permitted to be in the presence of ammunition and should dispose of the rounds immediately. ROA.22-50892.618. McMaryion threw the rounds into the trash. ROA.22-50892.712, 718-20. From his February 2022 release from prison until the March 2022 search of his home, McMaryion had no incidents or violation of the conditions of his supervised release, and he was otherwise fully compliant. ROA.22-50892.559, 596-97.

## A.    Search of the home (March 2022).

On March 23, 2022, the Probation Office searched McMaryion's home. ROA.22-50892.559-60. To coincide with the planned search, McMaryion's probation officer directed McMaryion to report that day to the Probation Office, which McMaryion dutifully did. ROA.22-50892.559. On arrival at the Probation Office, McMaryion was taken to a small

holding room, normally used for obtaining urine samples, where three probation officers placed McMaryion in handcuffs combined with a belly chain. ROA.22-50892.560-61. No advice of rights or *Miranda* warnings were given to McMaryion. ROA.22-50892.578. McMaryion received no reminder of his right to remain silent, or that anything McMaryion said could and would be used against him in court. ROA.22-50892.578. McMaryion was not advised that he could have an attorney present, nor was he asked if he wished to speak with an attorney. ROA.22-50892.581.

Handcuffed and chained by the probation officers who had ordered him to appear that morning, McMaryion remained compliant. ROA.22-50892.587. Informed by the supervisory probation officer that probation had authorized a search at McMaryion's home to find prohibited ammunition, McMaryion asked, if he could dispose of any ammunition they might find there in order to remain in compliance. ROA.22-50892.580, 585-86.

The probation officers transported McMaryion, still handcuffed and in chains, to the Duke Avenue address, where the search was underway. ROA.22-50892.562. The searching officers found in McMaryion's master bedroom closet the box of ammunition still remaining there from 2017,

which McMaryion's mother had secured in the closet and covered with clothes. ROA.22-50892.668-70, 693. McMaryion denied knowing that the ammunition had been there, while he was newly residing in the Duke Avenue home. ROA.22-50892.722.

**B.     Jury trial (July 5-6, 2022).**

Before jury selection, a defense motion *in limine* sought to exclude from evidence or argument any use of McMaryion's statement in response to being informed of the search. ROA.22-50892.419, 421-22. The district court accepted the prosecutor's commitment to "steer clear" of McMaryion's statements when examining the Supervising Probation Officer, Mr. Richards. ROA.22-50892.423.

At trial, probation officers testified that they had informed and reminded McMaryion of his felon status and the prohibition, under law and his conditions of supervised release, from possessing firearms or ammunition. ROA.22-50892.597-99. Supervising Probation Officer, Richards, described how he and two other officers led McMaryion to a small room normally used to take urine samples. ROA.22-50892.560. They handcuffed McMaryion and told him there was a surprise search of his home taking place as they spoke. ROA.22-50892.560-61. Richards and

the other two officers rode in a car with McMaryion, still handcuffed, and waited outside the home in the car for over an hour and a half. ROA.22-50892.562-63.

Defense counsel began his cross-examination of Richards continuing with the time spent with McMaryion in the car, outside the home. ROA.22-50892.563. After asking about the conduct of the search within the home, counsel asked Richards about any conversations had with McMaryion inside the vehicle. ROA.22-50892.566. Counsel limited the inquiry to the hour and one half in the car, pending the ongoing search. ROA.22-50892.567.

The prosecutor went to side bar and argued to the district court that McMaryion's counsel had "opened the door" to permit her to pursue McMaryion's supposedly incriminating unadvised statements, made earlier in the probation office, when McMaryion was first handcuffed and confronted with news of the search. ROA.22-50892.568. Defense counsel denied opening the door and opposed the attempt to introduce McMaryion's statements. ROA.22-50892.569.

The district court heard the lawyers' arguments and allowed voir dire of the witness. ROA.22-50892.575-80. Defense counsel restated the

objection that the unwarned custodial statements violated McMaryion's Fifth Amendment right to counsel and right against self-incrimination and were therefore inadmissible. ROA.22-50892.581. The district court allowed the Government to introduce and argue the challenged statements. ROA.22-50892.581-82.

Probation Officer Ramos testified that she inspected the Duke Avenue home before McMaryion's release, and she approved it for McMaryion to live there. ROA.22-50892.602-04. USPO Ramos took just 15-20 minutes to inspect the entire house. ROA.22-50892.606. She looked in the closets, and she saw the box in McMaryion's bedroom closet, but did not look in the box or otherwise think it noteworthy. ROA.22-50892.607.

Probation Officer Abigail Vargas testified that she was the officer supervising McMaryion during his release. ROA.22-50892.611. Officer Vargas told of visiting McMaryion in February 2022 at his relocated home and spotting two rounds of ammunition lying on the floor. ROA.22-50892.618. She directed McMaryion to "get rid of the ammunition." ROA.22-50892.620. But Officer Vargas also testified that she saw no other ammunition in the home. ROA.22-50892.621. On the day of the

search in March 2022, Vargas drove the car containing McMaryion and the two other officers when they went to the scene of the search and remained outside the home. ROA.22-50892.628.

USPO Kara Foster testified as to the conduct of the search at McMaryion's home. ROA.22-50892.633. As an evidence technician, that day Officer Foster filmed a video of the search and also coordinated retrieval and packaging of the evidence seized during the search. ROA.22-50892.637. Officer Foster did not observe every item as it was found, rather she only photographed them where they happened to lie when the other officers called her over to do so. ROA.22-50892.668.

At the conclusion of the Government's case, McMaryion moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. ROA.22-50892.677. The district court denied McMaryion's motion. ROA.22-50892.680.

McMaryion first called as a witness Detective Justin Caid, of the Odessa Police Department. ROA.22-50892.685. Detective Caid had been the Task Force Officer in 2017 who obtained the arrest warrant for McMaryion, based on the search that Caid had conducted at McMaryion's home to find the ammunition that was left in the home, and later

rediscovered in 2022. ROA.22-50894.11-14. The Government immediately objected to questions put to Detective Caid on relevance grounds, and the district court sustained the Government's objection. ROA.22-50892.686.

Furthermore, McMaryion's mother testified to the condition of the house before and after McMaryion returned from prison. ROA.22-50892.689-94. She stated that no one had occupied the house since McMaryion's 2017 arrest, until she went to clean the home for probation's inspection. ROA.22-50892.692-93. She explained how the ammunition plus magazines and holsters remained in the house since 2017. ROA.22-50892.691-92. She thought nothing of it, reasoning that if the Odessa Police in 2017 had not seized the ammunition, there must have been no legal problem with it. ROA.22-50892.694, 697. Together with her grandson (McMaryion's son), she loaded all the ammunition into a large box, added clothes to fill the box to its top, and slid the heavy item into the bedroom closet. ROA.22-50892.693.

Next, Christina Fullbright testified on McMaryion's behalf. ROA.22-50892.701. Ms. Fullbright shares a child with McMaryion. ROA.22-50892.701. Fullbright told how she had visited McMaryion twice

a week at the Odessa home after he returned from prison. ROA.22-50892.702-03. She testified that during those weeks she saw no ammunition in the home. ROA.22-50892.702, 704. Ms. Fullbright did confirm that she had seen the large box in the closet, but it was not evident that the box contained ammunition. ROA.22-50892.702.

Further, McMaryion testified that he did not know that the ammunition was present in the closet, nor had there been any intent on his part to assert control and dominion over any ammunition. ROA.22-50892.712-13, 722. McMaryion worked long hours at heavy labor in his new job. ROA.22-50892.714. When at home, if he was not sleeping, McMaryion intermittently tried to clean up. ROA.22-50892.714-15, 722. McMaryion found it difficult to adjust, as the home was filled with reminders of a past failed relationship (to include proofs of infidelity by his ex), and McMaryion suffered still from the recent loss of his father. ROA.22-50892.713-14, 722-23. Accordingly, McMaryion had not yet uncovered the box in the back of the closet, as he never got far each time he began to clean his house. ROA.22-50892.712-13.

Defense counsel again moved for a judgment of acquittal at the close of the defense case. ROA.22-50892.732. The district court again

denied the motion for judgment of acquittal. ROA.22-50892.732.

At closing argument, the Government relied extensively on the supposedly incriminating statements by McMaryion in response to the announcement of the search at his home. ROA.22-50892.770, 772. Notwithstanding the evidence that the ammunition remained from 2017, never seized by the police, and the box remained in the back of the closet yet gave no sign of its contents, the Government argued that McMaryion's response to the probation officers handcuffing him proved McMaryion's knowledge and possession of the forbidden ammunition. ROA.22-50892.770, 772.

Defense counsel argued in closing that McMaryion had testified truthfully that he had not known of the box or its contents. ROA.22-50892.776-77. McMaryion's mother testified that she had collected all the ammunition, placed it in a box and stashed the box in the back of the closet, so that it was not readily to be seen. ROA.22-50892.773-74. The probation officer conducting the home inspection told how she had not seen the box or known it contained ammunition. ROA.22-50892.774-75. Ms. Fullbright told how she had never been able to see inside the box during her many visits to the home. ROA.22-50892.775. And all this

testimony and evidence supported McMaryion's account that he had not occasion to discover or realize the ammunition was present in a box in the back of his closet, meaning he lacked the knowledge or intent to possess the ammunition. ROA.22-50892.776-77. The jury convicted McMaryion on the sole count of the Indictment. ROA.22-50892.781.

## II. PSR and sentencing.

The district court held a sentencing hearing in October 2022. ROA.22-50892.163, 22-50894.192. McMaryion objected to the Presentence Investigation Report (PSR) on the following grounds:

1. The PSR considered McMaryion's testimony at trial to be perjury because the government witnesses contradicted McMaryion, and the jury had convicted McMaryion. ROA.22-50892.172, 22-50894.201.

2. McMaryion objected to the resulting 2-level enhancement to the calculated offense level for obstruction of justice. ROA.22-50892.187, 22-50894.208.

The district court adopted the PSR in its entirety and denied the defense objections. ROA.22-50892.191, 22-50894.220. The resulting Guidelines sentencing range, based on a Criminal History Category of V

and Offense Level of 16, was 41-51 months imprisonment. ROA.22-50892.194, 22-50894.220.

The district court sentenced McMaryion to prison for a term of 51 months. ROA.22-50892.194. In support of the imposed sentence, the district court stated it had considered the factors set forth in 18 U.S.C. §3553(a) and found the guideline range in this case to be fair and reasonable. ROA.22-50892.194.

Formal judgment in the 2022 case was entered on October 12, 2022. ROA.22-50892.9. McMaryion filed his Notice of Appeal from the conviction and judgment on October 6, 2022. ROA.22-50892.8.

## III. Revocation of supervised release.

During the same October 2022 hearing for sentencing McMaryion, the district court also took up the alleged violation of McMaryion's supervised release under the terms and conditions of his sentence for the prior 2017 offense. ROA.22-50892.9, 22-50894.192. McMaryion had previously been brought to initial appearance and detained on the basis of the Probation Office's petition to revoke McMaryion's supervised release. ROA.22-50894.146. A preliminary hearing found probable cause for the violations of supervised release. ROA.22-50894.173.

On the basis of the recently concluded trial and the jury's conviction of McMaryion, the district court deemed McMaryion to have violated his conditions of release, revoked McMaryion's supervised release, and sentenced McMaryion to additional prison time. ROA.22-50894.227.

The guidelines calculation for a prison sentence following violation of McMaryion's supervised release was, as agreed by the parties and the district court, a range of 8-14 months. ROA.22-50894.226. But the district court instead varied upward and imposed a statutory maximum sentence of 24 months, to be served consecutive to the sentence just imposed for the 2022 offense. ROA.22-50894.227. Accordingly, McMaryion is now serving a total of 75 months in prison.

McMaryion filed a Notice of Appeal from the revocation of supervised release and sentencing on October 6, 2022. ROA.22-50894.9. The Court has granted McMaryion's motion to consolidate the two appeals. Memorandum Order of October 19, 2022.

## SUMMARY OF THE ARGUMENT

In the short few weeks between his release from prison and his arrest, McMaryion unknowingly slept in his old, reclaimed bedroom, while a stash of undisposed ammunition, packed by his mother in a large

cardboard box and covered with various clothing items, sat unnoticed in the back of the closet. The evidence at trial showed that the ammunition was already in the home when McMaryion moved back in, and no one else, including probation officers, had noticed, remarked, or told McMaryion of it. McMaryion had no occasion to find it, as he worked long, hard hours, slept when he was not working, and struggled to adjust to his new life after prison. The only ammunition McMaryion knew about were two loose rounds found on the floor by his probation officer; Nolan threw them away, and maybe ten more single rounds he uncovered in cleaning, as the probation officer told him.

The Government utterly failed to meet its burden of proving beyond a reasonable doubt that McMaryion knew of, or intended to, constructively possess the ammunition in the box in his closet. The foregoing facts, coupled only with supposition and insinuation, are not enough to sustain a conviction for constructive possession of the larger stash of ammunition in the closet. McMaryion had no knowledge of, nor any intent to control, the ammunition that awaited discovery by the full probation office search team in March 2022. For that reason, the Government improperly stressed and relied upon an inadmissible

statement from McMaryion in response to his handcuffing and announcement of the search: Could he stay out of trouble if he just got rid of the ammunition? McMaryion meant the few stray rounds that had appeared. But the prosecution drove home their spin that this clearly showed McMaryion knew all along about the large ammo stash.

Moreover, the district court committed reversible legal error to permit the Government to introduce and argue McMaryion's statement made in handcuffs and chains, when confronted with the surprise search. McMaryion had compliantly reported to the probation office, where three officers surrounded him in a small room, cuffed and chained him, and announced they were off to search McMaryion's house for ammunition. The officers did not advise McMaryion of his *Miranda* rights, and the use at trial of McMaryion's compelled responsive statement violated McMaryion's Fifth Amendment right to counsel and his right against self-incrimination.

Notwithstanding the lack of evidentiary support to sustain the jury verdict, McMaryion also suffered procedural and substantive error in the resulting sentencing. The district court erred in equating McMaryion's testimony explaining how the ammunition came to be in the closet, while

denying knowledge or awareness it was present, with outright perjury, and deeming McMaryion's testimony to be obstruction of justice. The Guidelines calculation therefore included an erroneous two-level enhancement for obstruction of justice, and McMaryion's resulting sentence was excessive.

Finally, the vacatur of the trial verdict and sentence necessitates vacating the sentence imposed on revocation of McMaryion's supervised release. The reversal of the jury verdict and conviction removes all stated basis for the revocation and sentencing of McMaryion under his prior existing sentence, and the Court should remand and return McMaryion to supervised release.

### ARGUMENT AND AUTHORITIES

**I.    The district court erred when it denied McMaryion's Motion for Judgment of Acquittal because the evidence failed to prove McMaryion lacked knowledge and intent necessary to have constructive possession of the ammunition.**

### A.    Standard of review.

A district court may set aside a verdict and enter a judgment of acquittal on its own or upon the motion of the defendant if the evidence is insufficient to sustain a conviction of an offense. Fed. R. Crim. P. 29. When the district court denies a defendant's motion for a judgment of

acquittal, the appellate court reviews that decision *de novo* applying the sufficiency of the evidence standard. *United States v. Willis*, 562 Fed. Appx. 249, 252 (5th Cir. 2014) (citing *United States v. Lopez–Urbina*, 434 F.3d 750, 757 (5th Cir. 2005)).

"The test for reviewing the sufficiency of the evidence is whether a reasonable jury could conclude that the relevant evidence, direct or circumstantial, established all of the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the verdict." *Id.* (quoting *United States v. Fountain*, 277 F.3d 714, 717 (5th Cir. 2001)). If the evidence "viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, the conviction should be reversed." *United States v. Pennington,* 20 F.3d 593, 597 (5th Cir. 1994); *United States v. Menesses,* 962 F.2d 420, 426 (5th Cir. 1992).

The evidence presented must "allow the jury to find every element of the offense beyond a reasonable doubt." *United States v. Rojas Alvarez*, 451 F.3d 320, 333 (5th Cir. 2006) (quoting *United States v. Redd*, 355 F.3d 866, 872 (5th Cir. 2003). "A conviction must be overturned if it is based on speculation alone: '[A] verdict may not rest on mere suspicion,

speculation, or conjecture, or on an overly attenuated piling of inference on inference.'" *Rojas Alvarez*, 451 F.3d at 333 (quoting *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)).

**B.    The evidence did not establish essential elements -- knowledge of, and intent to control, the ammunition -- to prove constructive possession.**

To obtain a conviction for unlawful possession of ammunition under 18 U.S.C. § 922(g)(1), the Government must prove each of the following elements beyond a reasonable doubt: (1) that McMaryion knowingly possessed ammunition as charged; (2) that before he possessed the ammunition,  McMaryion had been convicted in a court of a crime punishable by imprisonment for a term in excess of a year; (3) that McMaryion knew that he had been convicted of a crime punishable by imprisonment for a term in excess of one year; and (4) that the ammunition possessed had traveled in or affected interstate or foreign commerce, that is, before McMaryion possessed the ammunition, it had traveled at some time from one state to another or between any part of the United States and any other country. *United States v. Meza*, 701 F.3d 411, 418 (5th Cir. 2012) (listing elements of offense); *United States v. Broadnax*, 601 F.3d 336, 341 (5th Cir. 2010) (same); *see Rehaif v. United*

*States,* 139 S. Ct. 2191, 2200 (2019) (government must prove the defendant knew he belonged to the relevant category of prohibited person). ROA.22-50892.128-29. (Jury charge).

The element of possession can be satisfied by proof of actual or constructive possession. *See Meza,* 701 F.3d at 419-22; *United States v. De Leon,* 170 F.3d 494, 498 (5th Cir. 1999). A person who knowingly has direct physical control over a thing, at a given time, is in actual possession of it. A person who is not in actual possession can constructively possess an object, if he knowingly has both the power and the intention, at a given time, to exercise dominion or control over the object. *See*, *e.g.*, *United States v. Lewis,* 265 F. App'x 255, 257 (5th Cir. 2008); *United States v. Horace*, 227 F. App'x 350, 352-53 (5th Cir. 2007); *United States v. Gross,* 142 F. App'x 829, 830 (5th Cir. 2005).

"[G]uilty knowledge may ***not*** be inferred solely from the defendant's control" of a location. *United States v. Rivera,* 444 F. App'x 774, 781 (5th Cir. 2011) (quoting *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 361 (5th Cir. 2010)) (emphasis added). When a forbidden item is "hidden," *i.e.*, not "clearly visible or readily accessible," in a location and the defense is lack of knowledge, a "knowledge" instruction more specific than usual

is required. *Pennington,* 20 F.3d at 598. In these cases, there must be "additional circumstantial evidence that is suspicious in nature and demonstrates guilty knowledge." *Gonzalez-Rodriguez,* 621 F.3d at 361; *accord United States v. Mudd,* 685 F.3d 473, 478 (5th Cir. 2012); *United States v. Sanchez,* 432 F. App'x 957, 959 (5th Cir. 2010) (listing indicators of guilty knowledge).

This Court has further ruled that in cases alleging knowledge of a forbidden item hidden from view in a location:

> The government may not rely only on a defendant's ownership and control of the [location] to prove the defendant knew that he possessed a [forbidden item]. While these are factors [the jury] may consider, the government must prove that there is other evidence indicating the defendant's guilty knowledge of a [forbidden item] hidden in the [location].

*Pennington,* 20 F.3d at 598.

A ready analogy lies in the cases where a driver had control of a vehicle but did not know of the drugs that were hidden in a container within the vehicle. In *Pennington*, marijuana was hidden in a cardboard box secreted between pallets of tile in a tractor trailer truck, unbeknownst to the two drivers, who had not watched the loading of the cargo. *Pennington*, 20 F.3d at 596. Because both drivers denied knowledge of the drugs' presence, this Court held, "The knowledge

requirement in a possession case can be inferred from control of the vehicle in some cases; when the drugs are hidden, however, control alone is not sufficient to prove knowledge." *Id.* at 598. *See also United States v. Vara,* 476 F. App'x 554 (5th Cir. 2012) (*per curiam*) (Government failed to prove beyond a reasonable doubt defendant's knowledge of drugs hidden in quarter panel of used car he recently purchased; judgment vacated).

Similarly, in *Rojas Alvarez*, husband Pinon and wife Alvarez went to trial on charges, among others, of possession of cocaine and heroin with intent to distribute. *Rojas Alvarez*, 451 F.3d at 320. Pinon lived in a trailer, while Alvarez had moved to a nearby home address. Pinon had given Alvarez a key to the trailer to do his laundry, however, Pinon denied knowledge of the drugs found in a pair of boots secreted in a hidden compartment behind the wall in his trailer. *Id.* at 324-25.

The Government claimed Pinon had knowledge because he had control of the trailer. *Id.* at 334. But the Court held, "as the Government acknowledges, custody and control of a residence are not dispositive of knowledge of any narcotics located in that residence." *Id.*; *see United States v. Garza,* 990 F.2d 171, 174 (5th Cir. 1993). The Court held:

The Government introduced no evidence to counter Pinon's explanation for giving Alvarez the key; the Government only *argued* that Pinon must have been aware of the ramifications of giving Alvarez the key to the trailer. But argument is not evidence. As Pinon's testimony about the circumstances of giving Alvarez the key went unchallenged, we do not believe that a rational jury could infer from the evidence presented that Pinon was aware of the contraband.

*Rojas Alvarez*, 451 F.3d at 336 (emphasis in original). *See also Mudd*, 685 F.3d at 477 ("mere proof of dominion over a place or vehicle is insufficient to sustain a conviction, of which knowing possession is an element, where the contraband at issue was discovered in a hidden compartment.").

Likewise, Nolyn McMaryion consistently claimed that he did not know of the presence of the ammunition in the closet. ROA.22-50892.712-13, 722. Actual possession was not at issue in this case, because McMaryion was never alleged or proven to have had direct, physical control of the ammunition. Instead, the verdict may stand only if it is proven beyond any reasonable doubt that McMaryion had constructive possession of the ammunition at the times and places alleged in the indictment. The Government failed to meet its burden to prove constructive possession.

As an initial matter, there was no dispute at trial as to how the

ammunition arrived in the home. ROA.22-50892.768. Mrs. McMaryion testified that the ammunition had remained in place since 2017. ROA.22-50892.694, 697. Mrs. McMaryion also testified how she had placed the box in the closet and covered it from view with clothing. ROA.22-50892.693. It was in fact unobserved by the probation officer on her home inspection. ROA.22-50892.607, 625.

There was no showing of any intention, design, or plan by McMaryion to obtain or introduce ammunition into the home. ROA.22-50892.678. On the contrary, McMaryion acknowledged the two loose rounds discovered by a visiting probation officer, and he promptly complied with the requirement to dispose of them. ROA.22-50892.619-20, 712, 718, 720. He continued in seeking to remain compliant throughout the entire episode of his arrest and the search. ROA.22-50892.559, 561, 597.

The Government argued to the jury that McMaryion's purported statement against interest, made while in custody of the probation officers on the day of the search, proves his prior knowledge of the ammunition in the closet. ROA.22-50892.770, 772, 779. By asking if he might remove any ammunition and thereby remain compliant, the

Government claimed, McMaryion incriminated himself. ROA.22-50892.575, 580. But the offer to remove any ammunition, if found, is at most ambiguous, as it is equally valid to mean McMaryion was just trying to remain compliant, in particular as to the only loose rounds he did know about. ROA.22-50892.577, 586. As a consistently compliant supervisee, McMaryion aimed to please and stay out of trouble – without confirming any accusations by probation. This was the only reasonable interpretation of McMaryion's intent -- not an admission or understanding of what specific ammunition the probation supervisor referred to. ROA.22-50892.719-20, 722.

Furthermore, notwithstanding the statement's prejudice and lack of probative value, the unadvised statement that McMaryion made while in custody was inadmissible, as will be discussed, *infra*, and the district court should not have admitted it into evidence. ROA.22-50892.569, 581.

## II. The district court improperly admitted McMaryion's unadvised statement in violation of *Miranda v. Arizona*.

### A. Standard of review.

The Court reviews the erroneous admission of evidence unconstitutionally obtained under a *de novo* standard as to issues of law, where the facts are otherwise not clearly erroneous. *United States v.*

*Courtney*, 463 F.3d 333, 336 (2006); *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2005); *United States v. Green*, 272 F.3d 748, 752 (5th Cir. 2001).

The erroneous admission of testimony elicited in violation of the Fifth Amendment right to counsel is subject to the doctrine of harmless constitutional error. *Green,* 272 F.3d at 756; *Goodwin v. Johnson,* 132 F.3d 162, 181 (5th Cir. 1997). When a trial court improperly admits evidence in violation of the exclusionary rule, that court's findings must be reversed unless the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 23-24 (1967); *Arizona v. Fulminante*, 499 U.S. 279, 302 (1991). The Government has the burden of proving to this Court "beyond a reasonable doubt, that the improper testimony did not contribute to the jury's verdict." *Green*, 272 F.3d at 756; *United States v. Moreno,* 185 F.3d 465, 475 (5th Cir. 1999).

**B.    The totality of the circumstances shows McMaryion's custodial statement was involuntary and without advice of his rights.**

The Fifth Amendment of the U.S. Constitution forbids Government use at trial of self-incriminating statements by the defendant if those statements were not voluntary. U.S. CONST. AMEND V; *Miranda v.*

*Arizona*, 384 U.S. 436, 446-50, 467 (1966); *see also J.D.B. v. North Carolina,* 564 U.S. 261, 269 (2011) (substance of *Miranda* warnings must be given prior to questioning). To ensure the voluntariness of a defendant's answers, he must first be advised of certain rights: (1) the right to remain silent; (2) that his statements may be used against him at trial; (3) he has a right to have an attorney present during questioning; and (4) if he cannot afford an attorney, one will be appointed for him. *Miranda*, 384 U.S. at 479; *Florida v. Powell,* 559 U.S. 50, 59-60 (2010) (quoting *Miranda's* "now-familiar" warnings); *Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981) (necessary before custodial interrogation).

When a defendant is in custody and subject to government questioning, *Miranda* warnings must be given, or else the resulting statement is not admissible. *Illinois v. Perkins,* 496 U.S. 292, 297 (1990) (custody and interrogation "may create mutually reinforcing pressures" that can overcome the suspect's will.); *United States v. Arellano-Banuelos,* 912 F.3d 862, 866-68 (5th Cir. 2019) (*Miranda* warnings required when defendant in custody). To introduce at trial a defendant's statements made in response to custodial interrogation, the prosecution must demonstrate either that the statements were obtained in

compliance with *Miranda*, or that an exception applies. *Miranda*, 384 U.S. at 479; *United States v. Lim,* 897 F.3d 673, 690-91 (5th Cir. 2018) (statement inadmissible because officers did not give *Miranda* warnings and no exception excused such failure).

"Custody" is the deprivation of "freedom of action … in any significant way," which is determined by asking whether, under the totality of the circumstances, a reasonable person would not feel free to end the encounter and leave. *Howes v. Fields,* 565 U.S. 499, 518 (2012); *United States v. Cavazos,* 668 F.3d 190, 194 (5th Cir. 2012) (court held defendant was in custody despite being at home, because of number of officers present and defendant was handcuffed); *United States v. Chavira*, 614 F.3d 127, 132-33 (5th Cir. 2010) (person "otherwise deprived of his freedom in any significant way"); *Murray v. Earle*, 405 F.3d 278, 286 (5th Cir. 2005) (custodial interrogation occurs when "a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest"); *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (*en banc*) (same); *see also J.D.B.,* 564 U.S. at 270 (custody determination must consider "circumstances

surrounding the interrogation").

While a routine probation interview by appointment at a mutually convenient time might not normally qualify as custodial, *e.g., Minnesota v. Murphy,* 465 U.S. 420, 431-33 (1984), a defendant is in custody once there has been an arrest or restraint on freedom of movement consistent with a formal arrest. *See*, *e.g.*, *United States v. Barnes,* 713 F.3d 1200, 1204-06 (9th Cir. 2013) (ruled in custody because defendant told to appear for unscheduled meeting with parole officer under threat of revocation, officers directly confronted defendant with evidence of guilt, and interrogation occurred with three law enforcement officials in small office); *United States v. Ollie,* 442 F.3d 1135, 1136, 1139-40 (8th Cir. 2006) (ruled in custody because defendant was ordered to meeting for questioning and feared refusal would be violation); *United States v. Newton,* 365 F.3d 659, 675-77 (2d Cir. 2004) (ruled in custody because defendant was seized and placed in handcuffs).

*Miranda* warnings apply to interrogation when the defendant in custody knows the persons questioning him are acting on behalf of the Government. *See Perkins,* 496 U.S. at 297 (no interrogation where defendant did not know he was talking to undercover officers and thus

"danger of coercion" was absent). "Interrogation" is defined as "express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980). The functional equivalent of interrogation consists of "words or actions … that the [questioner] should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301; *Arellano-Banuelos*, 912 F.3d at 867-68 (functional equivalent of interrogation when agent went beyond routine booking and should have known questioning was likely to elicit incriminating statements); *Chavira*, 614 F.3d at 133 & n.8.

Unwarned statements are inadmissible at trial if they were involuntary or otherwise coerced. *See Chavez v. Martinez,* 538 U.S. 760, 770-73 (2003) (5th Amendment bars use of involuntary statements at trial); *Fulminante*, 499 U.S. at 296, 306-12 ("[A]n involuntary confession may have a more dramatic effect on the course of a trial than do other errors …its admission was not harmless error."); *Green,* 272 F.3d at 757 (admission of statement not harmless error because important in government's proof of defendant's knowing possession of a firearm).

To determine the voluntariness of McMaryion's statement, the Court must consider the totality of the circumstances surrounding his

interview and detention by the probation officers. *Haynes v. Washington,* 373 U.S. 503, 513-24 (1963); *Schneckloth v. Bustamente*, 412 U.S. 218, 226 (1973). Specifically, the Court should consider (1) the location of the questioning, *Miranda*, 384 U.S. at 457-58; *see Barnes,* 713 F.3d at 1204 (confession involuntary when four agents questioned defendant in "small office, behind a closed [electronically locked] door"); (2) whether *Miranda* warnings were given, *see Hopkins v. Cockrell,* 325 F.3d 579, 584-85 (5th Cir. 2003) (confession involuntary, despite prior *Miranda* warnings); and (3) whether McMaryion initiated contact with the government law enforcement officials.

Under the exclusionary rule, evidence obtained in violation of the Fifth Amendment may not be introduced at trial as evidence to support a defendant's guilt. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004) ("failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained."); *see Bram v. United States,* 168 U.S. 532, 548 (1897) (evidence obtained in violation of the Fifth Amendment cannot be used against defendant in federal court).

When a trial court improperly admits evidence in violation of the

exclusionary rule, that court's findings must be reversed unless the error was harmless beyond a reasonable doubt. *Chapman,* 386 U.S. at 23-24; *Fulminante*, 499 U.S. at 302 (government must prove beyond a reasonable doubt that the admission of defendant's involuntary confessions, which violated 5th Amendment rights, was harmless error); *Chavira*, 614 F.3d at 136 ("where "the trier of fact**, expressly relied** on the [contested statements] which we hold inadmissible under *Miranda* …. We are therefore constrained to hold that the error was prejudicial.") (emphasis in original).

McMaryion properly and timely objected, more than once, to the government's use of the statement elicited by probation officers as McMaryion was arrested and handcuffed. ROA.22-50892.82-83, 421, 569, 581. The issue is therefore properly preserved for review on this appeal.

The Government cannot dispute that McMaryion was in custody when he made the statement – he was handcuffed to a body chain, and objectively knew he was not free to leave. ROA.22-50892.561, 564, 576, 580, 587. McMaryion's statement came in response to the functional equivalent of questioning by government officials – McMaryion responded immediately to the probation officers' confronting McMaryion

with the fact of the search, the reason for summoning McMaryion to the probation office, and the allegation that McMaryion was harboring ammunition in his room. ROA.22-50892.560, 576-780, 585-86. It was natural for McMaryion to respond to the topic, and probation officers should have expected it, by first asking how McMaryion might avoid violating his release.

In the totality of the circumstances, handcuffed and chained in a small room and outnumbered by three probation law enforcement officers, who had compelled his unscheduled presence that day, McMaryion tried to comply with his supervision -- by asking what he could do to remedy the alleged violation. ROA.22-50892.713, 718-20. The statement was the product of a coercive setting and cannot be voluntary or in compliance with McMaryion's Fifth Amendment right against self-incrimination.

The Government justifies its introduction into evidence of the inadmissible, unadvised statements, by contending that defense counsel in cross-examination "opened the door." ROA.22-50892.569, 575. This could not be further from the truth.

The district court preliminarily granted, or held in advisement, the

motion *in limine* by defense counsel to exclude and bar introduction of McMaryion's custodial statements made to three probation officers surrounding him in the probation office urine sample room. ROA.22-50892.82-83. The prosecutor avoided this area on direct examination. ROA.22-50892.561-62. But the cross-examining defense counsel did not ask about the statements made in the probation office, when McMaryion first learned of the search and was handcuffed. ROA.22-50892.563-64, 566. The defense cross-examination instead was focused on a different setting hours later, when McMaryion was handcuffed in the car with his probation officer, on the site of the search of his home. ROA.22-50892.563-66.

Counsel asked, "Were you in a vehicle with [probation officers and] Mr. McMaryion … during that time [of the residential search]?" ROA.22-50892.563. And again, he asked, "While you were in the vehicle with Mr. McMaryion, and while the search was going on inside, did you have a conversation with him during that period of time …?" ROA.22-50892.566. That questioning cannot constitute any waiver or "opening the door" to permit the Government to go elsewhere regarding a separate time and place, that had been forbidden.

Notwithstanding the ambiguous probative value of McMaryion's statement, without the boost of the prosecution's spin to the jury, the other substantive evidence at trial could not support a finding of knowledge or intent by McMaryion to possess and control the ammunition hidden in his closet. ROA.22-50892.770, 772. "[T]he evidence was not admitted for impeachment purposes only, but rather as evidence of [] guilt in the government's case-in-chief." *Green*, 272 F.3d at 754. The district court's error in permitting the Government to introduce, argue and rely upon McMaryion's statement was therefore not harmless. "The inescapable fact is that the government would not have had this evidence had the *in limine* objection been properly sustained at trial." *Green*, 272 F.3d at 756 (wrongly admitted evidence "was the only direct evidence of his knowledge of and access to the firearms charged in the indictment. Given this fact, … it cannot be said that the error in this case was harmless beyond a reasonable doubt.").

The Court should therefore reverse the judgment and vacate the conviction.

## III.    The district court erred in enhancing McMaryion's guidelines sentence for obstruction of justice.

### A.    Standard of review.

The Court reviews de novo the district court's application of the Sentencing Guidelines, but it applies a clearly erroneous standard to the findings of fact made to support such sentencing. *United States v. Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009). In applying §3C1.1 to a defendant's testimony, the defendant's statements should be evaluated in a light most favorable to the defendant. *United States v. Spakowski*, 32 F.3d 565, 1994 WL 442370, at *10 (5th Cir. Jul. 26, 1994) (per curiam)

### B.    Equating McMaryion's testimony to perjury was procedural sentencing error.

When a defendant challenges the application of the obstruction of justice enhancement in Section 3C1.1 of the Sentencing Guidelines, care must be taken to prevent chilling a defendant's right to testify by imposing a mandatory enhancement for obstruction of justice. *United States v. Dunnigan*, 507 U.S. 87, 95 (1993) ("Of course, not every accused who testifies at trial and is convicted will incur an enhanced sentence under §3C1.1 for committing perjury."); *United States v. Johnson*, 880

F.3d 226, 233 (5th Cir. 2018) (noting application of §3C1.1 in some "contexts would impermissibly risk transforming the enhancement into a de facto penalty on defendants who exercise their right to testify on their own behalf."). If a defendant objects to a sentence enhancement resulting from his trial testimony, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice." *Dunnigan*, 507 U.S. at 95.

The district court below made no specific or detailed findings to support the elements of perjury underpinning the enhancement. ROA.22-50892.177, 22-50894.206. "Because the fact of a conviction does not imply that a testifying defendant committed perjury, …. [s]imply basing the enhancement on the jury's verdict is improper." *United States v. Perez-Solis*, 709 F.3d 453, 469-470 (5th Cir. 2013) (quoting *United States v. Ricardo*, 472 F.3d 277, 285 (5th Cir. 2006)).

McMaryion's testimony at trial did not constitute what are usually considered traditional or classic types of obstruction: It did not impede the investigation before trial; it did not tamper with witnesses or hinder or spoil evidence; and McMaryion was always compliant and responsive to the direction of the probation office and the district court. *See United*

*States v. Morales-Sanchez*, 609 F.3d 637, 640-41 (5th Cir. 2010) (obstruction "requires, at the least, an actual, negative effect on either the course or the result of the investigation.").

The district court at sentencing merely stated, that he had been present at trial and concurred with the probation officer's assessment in the PSR, that McMaryion had perjured himself. ROA.22-50892.177, 22-50894.206. Because this is an inadequate basis to overrule an objection to the enhancement, the Court should vacate McMaryion's sentence and remand for resentencing. *United States v. Johnson*, 352 F.3d 146, 149 (5th Cir. 2003) ("The district court's findings are not adequate because they do not encompass the factual predicates for" perjury).

## IV. Invalidity of the newer criminal conviction removes the basis for revocation of McMaryion's supervised release.

### A. Standard of review.

The Court reviews a revocation of term of supervised release under the "plainly unreasonable" standard as described in 18 U.S.C. §§ 3742(a)(4) and (e)(4). *United States v. Foley,* 946 F.3d 681, 685 (5th Cir. 2020); *United States v. Warren*, 720 F.3d 321, 326 (5th Cir. 2013); *United States v. Miller*, 634 F.3d 841, 842-43 (5th Cir. 2011). Under the plainly unreasonable standard, the Court first evaluates "whether the district

court procedurally erred," before considering "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Foley*, 946 F.3d at 685; *Miller*, 634 F.3d at 843 (citing *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008)). If the sentence is unreasonable, then the Court will consider "whether the error was obvious under existing law." *United States v. Dunigan,* 555 F.3d 501, 506 (5th Cir. 2009); *see Foley*, 946 F.3d at 685.

Procedural errors include "failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence, including failing to explain a deviation from the Guidelines range." *Foley,* 946 F.3d at 685; *Warren*, 720 F.3d at 326; *United States v. Kippers,* 685 F.3d 491, 497 (5th Cir. 2012); *United States v. Peltier,* 505 F.3d 389, 392 (5th Cir. 2007).

"A sentence is substantively unreasonable if it (1) does not account for a factor which should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Foley*, 946 F.3d at 685 (citing *Warren*, 720 F.3d at 332; and *Peltier*, 505 F.3d at 392).

**B.    The sentence on revocation was plainly unreasonable.**

"[T]he goal of revocation is to punish a defendant for violating the terms of the supervised release." *Miller*, 634 F.3d at 843. It is plainly unreasonable to punish a defendant for a violation consisting of a crime that was not proven or did not occur. *See United States v. Jones*, 484 F.3d 783 (5th Cir. 2007).

The district court based its revocation and sentencing on the findings of the jury trial. ROA.22-50894.227. In light of that trial's infirmity, the Court's holding in the case of *United States v. Jones*, dictates the proper remedy.

In *United States v. Jones*, the defendant Jones was convicted by a jury of unlawful possession of a firearm by a previously convicted felon. *Jones*, 484 F.3d at 785. Jones was not only sentenced for that conviction, but Jones also received an additional sentence on revocation of his supervised release by reason of that conviction. *Id*. Furthermore, like McMaryion, Jones received the statutory maximum sentence of 24 months as an upward variance from the Guidelines sentence on revocation. *Id*.

Jones appealed his conviction, sentence and revocation and

sentence on revocation, to this Court, on grounds that the district court had improperly admitted constitutionally inadmissible evidence, in violation of his Fifth Amendment rights, to prove his knowledge or intent. *Id.* at 783, 788. This Court agreed and vacated Jones's conviction and sentence for possession of a firearm. *Id.* at 788, 793.

Turning next to the sentence on revocation of Jones's supervised release, this Court deemed "it prudent to remand this matter to the court that handed down the revocation sentence based in large part on the conviction we now vacate and remand, so that the underlying basis for Jones's revocation sentence may be reconsidered and clarified." *Id.* at 793.

This Court should similarly vacate and remand Nolyn McMaryion's revocation sentence.

## CONCLUSION

For the foregoing reasons, the Court should vacate the judgment and conviction, and direct the entry of a judgment of acquittal for Nolyn Wayne McMaryion. For similar reasons, the Court should reverse the revocation of supervised release and vacate the sentence imposed for violation of conditions of supervision. In the alternative, this Court

should reverse the sentence imposed and remand for resentencing. Appellant further requests all relief, whether in law or equity, to which he is entitled.

April 3, 2023

Respectfully submitted,

**CLOUTHIER LAW, PLLC**

*/s/ Susan J. Clouthier*
Susan J. Clouthier TBN 24062673
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, TX 77380
Telephone: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorney for Appellant**
**Nolyn Wayne McMaryion**

## CERTIFICATE OF SERVICE

I certify that on April 3, 2022, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice of the filing to counsel for the Government.

I further certify that (1) the required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of paper copies of the foregoing document to the Clerk of Court when requested.

*/s/ Susan J. Clouthier*
Susan J. Clouthier

**Attorney for Appellant**
**Nolyn Wayne McMaryion**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,165 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook font size 14.

/s/ *Susan J. Clouthier*
Susan J. Clouthier

**Attorney for Appellant**
**Nolyn Wayne McMaryion**